744 So.2d 803 (1999)
Daniel PETERS, Appellant,
v.
Theresa PETERS, Appellees.
No. 98-CA-00477-COA.
Court of Appeals of Mississippi.
March 23, 1999.
Rehearing Denied July 20, 1999.
Certiorari Denied September 16, 1999.
*804 David P. Oliver, Gulfport, Attorney for Appellant.
Otto A. Wusnack, Biloxi, Attorney for Appellees.
EN BANC.
PAYNE, J., for the Court:

PROCEDURAL HISTORY AND FACTS
¶ 1. The Peters were married on January 10, 1988 in Tennessee. The couple had one child, Travis Peters, born December 15, 1988. Thereafter, the Peters moved to Virginia. On September 20, 1991, an order for child support was entered by the Commonwealth of Virginia. On December 23, 1996, this action was commenced in Harrison County, Mississippi by the filing of a complaint of divorce based on irreconcilable differences by Daniel Peters against his wife, Theresa Peters. On July 16, 1997, Daniel Peters filed an amended complaint for divorce in which he alleged statutory grounds (habitual cruel and inhuman treatment). An answer was filed by Theresa Peters on August 18, 1997. A motion for temporary relief was filed by Daniel Peters on August 22, 1997. The answer and exhibits were filed by Theresa Peters on August 25, 1997 and August 30, 1997. A temporary support order was entered on October 9, 1997, by the Harrison County chancellor requiring Daniel to pay $257 per month for temporary child support. The court ruled on February 20, 1998, that it lacked jurisdiction to hear any matters regarding child custody, support, and visitation. The chancellor based his decision on the Mississippi Uniform Child Custody Act. Feeling aggrieved by this judgment, Daniel filed his notice of appeal on March 20, 1998. Having reviewed the record and studied the law attendant to the issues presented, we agree that the Harrison County Chancery Court does not have jurisdiction over child custody, support, and visitation.

ARGUMENT AND DISCUSSION OF THE LAW
¶ 2. The standard of review in this case is de novo, because the issue presented is one of law and not fact. Harrison County v. City of Gulfport, 557 So.2d 780, 784 (Miss.1990).

*805 ISSUE PRESENTED

I. WHETHER THE COURT ERRED IN DECLINING TO ASSUME JURISDICTION.
¶ 3. In order to address the question of jurisdiction, a review of statutory law on divorce in Mississippi is helpful. After jurisdiction over the person (which we will discuss below) is determined, we look to the subject matter included in a divorce proceeding. Miss.Code Ann. § 93-5-23 (Rev.1994) says:
When a divorce shall be decreed from the bonds of matrimony, the court, may, in its discretion, having regard to the circumstances of the parties and the nature of the case, as may seem equitable and just, make all orders touching the care, custody, and maintenance of the children of the marriage....
So, it is obvious, within the constraints of the rest of that passage, which are unnecessary for our discussion here, the chancery judge who has in personam jurisdiction over the parties of the marriage may deal not only with divorce but also with care, custody (which includes visitation) and maintenance (support) of the children.
¶ 4. There are requirements in regard to jurisdiction over the parties. In Mississippi, for a couple to begin the process of divorce, at least one party must be a resident of this State for six months. Miss. Code Ann. § 93-5-5 (Rev.1994). In this instance, Daniel met this requirement. Next, in irreconcilable differences cases, as this was originated, the plaintiff and defendant must join in the complaint, or the complaint must be filed "where the defendant can be personally served with process or where the defendant has written an appearance by written waiver of process." Miss.Code Ann. § 93-5-2 (Rev.1994). The divorce papers, no matter the grounds on which the request for divorce is based, must be filed in the county where the Mississippi resident party resides. Miss. Code Ann. § 93-5-11 (Rev.1994). Daniel, a resident of Harrison County, Mississippi filed his divorce papers in Harrison County, as his wife Theresa lives in Virginia.
¶ 5. Almost seven months later on July 16, 1997, Daniel amended his complaint to charge Theresa with habitual cruel and inhuman treatment. Theresa filed an answer on August 18, 1997, and on August 25, 1997, she filed an additional answer. On February 20, 1998, the chancellor granted the parties a divorce, having considered the situation that was presented.
¶ 6. On appeal, Daniel insists that Theresa entered a general appearance in Mississippi for the matter concerning divorce by responding to the divorce complaint this appearance necessarily including matters pertaining to the child. Thus the question raisedwhich must be answered is whether the appearance by Theresa on the matter of divorce invokes jurisdiction on the matters pertaining to the child. Mississippi does not recognize "special appearances" except where a party appears solely to object to the court's jurisdiction over his person on grounds that he is not amenable to process. Mladinich v. Kohn, 250 Miss. 138, 156, 164 So.2d 785, 791 (1964).
¶ 7. The basis for jurisdiction over a non-resident party as found in Miss.Code Ann. § 93-25-9 (Rev.1994) states:
In a proceeding to establish, enforce or modify a support order or to determine parentage, a tribunal of this state may exercise personal jurisdiction over a nonresident individual or the individual's guardian or conservator if:
(b) The individual submits to the jurisdiction of this state by consent, by entering a general appearance or by filing a responsive document having the effect of waiving any contest to personal jurisdiction.
Due to the fact that Theresa had entered several answers to the divorce proceedings, she has entered a "general appearance" and thus has qualified for having personal jurisdiction exercised against her personally. With the issue of personal *806 jurisdiction concluded, we turn toward the issues pertaining to the child.
¶ 8. On appeal, Daniel argues that the chancery court had jurisdiction to adjudicate all matters pending before that court, including child support, visitation rights and custody, and that because the chancellor, having authority, has failed to invoke jurisdiction, error has been committed. Daniel assumes that because the Mississippi trial court invoked jurisdiction over the matter of divorce, that necessarily, the chancellor was compelled to address proceedings which had been resolved in the State of Virginia. We disagree.

OUT OF STATE CUSTODY RULINGS
¶ 9. First we turn to the application of the Uniform Child Custody Jurisdiction Act in order to address the issue of visitation and custody. As stated in Stowers v. Humphrey, 576 So.2d 138, 140-41 (Miss. 1991) the application of the UCCJA in a dispute over jurisdiction between two states is a three step process.
A court must first determine if it has authority, or jurisdiction, to act following the guidelines of § 93-23-5. If a court determines that it does not have jurisdiction the process stops there. However, if that hurdle is cleared, a determination is made as to which court is the more appropriate and convenient forum under the guidelines of § 93-23-13. A court may decline to exercise jurisdiction if it is not the most appropriate or convenient forum. If the court accepts jurisdiction as the more convenient forum, the court must determine if the action to be taken is foreclosed by an order or judgment of the other state court. Hobbs v. Hobbs, 508 So.2d 677, 680 (Miss.1987).
Miss.Code Ann. § 93-23-5 (Rev.1994) (the jurisdiction provision of the UCCJA) states:
(1) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
(a) This state (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within six (6) months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state; or
(b) It is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his parents, or the child and at least one (1) contestant, have a significant connection with the state, and (ii) there is available in this state substantial evidence concerning the child's present or future care, protection, training and personal relationships; or
(c) The child is physically present in this state and (i) the child has been abandoned, or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; or
(d)(i) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraph (a), (b) or (c), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (ii) it is the best interest of the child that this court assume jurisdiction.
¶ 10. From our review of the facts in this case, the child had been living with his mother in Virginia since June of 1995. The child is not a resident of Mississippi, and notwithstanding his father's presence here, he has no connections. Furthermore, we cannot say that it would be in the *807 child's best interest for Mississippi to assume jurisdiction. Virginia has shown an interest in the welfare of this child. Accordingly, we find sufficient evidence to warrant denying the Harrison County Chancery Court jurisdiction over the issue of child custody and visitation based upon the UCCJA.

OUT OF STATE CHILD SUPPORT ORDERS
¶ 11. We now turn our attention to addressing child support. The chancellor decided to defer judgment on matters concerning the child to the Virginia court. As noted earlier, Miss.Code Ann. § 93-5-23 (Rev.1994) statutorily grants the chancellor discretion in determining peripheral matters contingent upon divorce. Miss. Code Ann. § 93-11-65 (Rev.1994) deals with custody and support decrees in instances where the child, his custodian or the defendant reside in Mississippi, and therefore, had no relevance here. However, Mississippi has also adopted the Uniform Interstate Family Support Act. Miss. Code Ann. §§ 93-25-1 through XX-XX-XXX (Rev.1994).
Where a state is asked to modify an out of state child support order, a tribunal of this state may exercise personal jurisdiction over a nonresident individual or the individual's guardian or conservator if:
(b) The individual [here Theresa] submits to the jurisdiction of this state by consent, by entering a general appearance or by filing a responsive document having the effect of waiving any contest to personal jurisdiction;
¶ 12. Theresa entered a general appearance. The question then arises whether the chancellor had authority to modify the Virginia support order. Under this statute he had that authority. However, as the statute notes, this decision is within the chancellor's discretion. With that said, we note that had the chancellor elected to exercise his discretion and modify the Virginia decree, we would be duty bound to affirm that ruling. Since he did not elect to do so he was bound by Miss. Code Ann. § 93-25-17(4) (Rev.1994) which states:
A tribunal of this state shall recognize the continuing, exclusive jurisdiction of a tribunal of another state which has issued a child support order pursuant to this chapter or to a law substantially similar to this chapter.
It is obvious that the chancellor followed the terms of Miss.Code Ann. § 93-25-21 (Rev.1994) in recognizing that the Virginia child support orders were controlling. The fact that a temporary support order was issued by the Mississippi chancery court during the pendency of these proceedings "did not create continuing, exclusive jurisdiction in the issuing tribunal." Miss.Code Ann. § 93-25-17(5) (Rev.1994).
¶ 13. After reading these statutes and after analyzing the situation, we find the chancellor acted within the confines of Miss.Code Ann. § 93-25-9 (Rev.1994). More specifically, we find that the chancellor acted within his discretion and not in an arbitrary or capricious manner. Following this statute, we recognize the lawful disposition of the child support order in Virginia.

CONCLUSION
¶ 14. The chancellor elected to defer addressing issues concerning the child to the courts in Virginia. This decision was within his discretion. Consequently, we find that Daniel Peters's argument concerning jurisdiction is not sustainable.
¶ 15. THE JUDGMENT OF THE CHANCERY COURT OF HARRISON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO THE APPELLANT.
KING, P.J., COLEMAN, DIAZ, AND IRVING, JJ., CONCUR.
*808 SOUTHWICK, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY McMILLIN, C.J., BRIDGES, AND LEE, JJ.
THOMAS, J., NOT PARTICIPATING.
SOUTHWICK, J., dissenting.
¶ 16. I find that the majority has ably discussed most of the relevant issues. However, because I would hold that the trial court erred by declining to set visitation rights, I respectfully dissent.
¶ 17. The statute regarding potential conflicts between states on child custody issues (which include visitation) is the starting point for analysis. One section of that applies to this action:
(1) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
. . .
(b) It is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his parents, or the child and at least one (1) contestant, have a significant connection with the state, and (ii) there is available in this state substantial evidence concerning the child's present or future care, protection, training and personal relationships....
Miss.Code Ann. § 92-25-5 (Rev.1994). As the majority properly concludes, Mrs. Peters subjected herself to jurisdiction here. Consequently, "there is available in this state substantial evidence concerning the child's present or future care, protection, training and personal relationships" since the child's mother is here to provide the information. The father, of course, is a resident. To find that the trial court did not have jurisdiction would mean even after the parties agreed to resolve the question of the continuation of their marriage here, and even if no other state was considering child custody issues, this state's courts would not have jurisdiction.
¶ 18. As Justice Prather pointed out in the case relied upon by the majority, the "application of the UCCJA in a dispute over jurisdiction between two states" involves three steps. Stowers v. Humphrey, 576 So.2d 138, 140 (Miss.1991). The starting premise, though, is that those steps are to resolve "a dispute over jurisdiction." If the parties have consented to a divorce in Mississippi and there is no pre-existing or contemporaneous proceeding in another State, then a chancellor may proceed unconcerned with the UCCJA.
¶ 19. My objection is that we have no evidence that any other State is addressing questions regarding custody and its ancillary issue of visitation. In 1991 an order was entered in Virginia requiring Mr. Peters to pay child support. Almost no evidence was presented below as to what those proceedings concerned, but it is evident from the subsequent proceedings here that there was no divorce previously granted in Virginia or anywhere else. What is asserted by Mrs. Peters regarding the Virginia litigation is that in 1991 the parties agreed that Mr. Peters would pay $170 per month in child support and an order was entered by the Juvenile and Domestic Relations District Court. The Virginia Department of Social Services through some procedure reviewed that order in 1997 and notified the state court that it should be increased. A Virginia domestic relations court so ordered and the amount was increased to $605 per month.
¶ 20. The evidence in the record is that the Virginia proceedings have addressed only child support. My agreement with the majority is therefore limited to the propriety of the trial court's declining to exercise jurisdiction over support despite that Mrs. Peters made a general appearance in Mississippi chancery court. Miss. Code Ann. § 93-25-9 (Rev.1994).
¶ 21. Where I disagree is based on the absence of any apparent involvement by Virginia courts in issues regarding custody and visitation. It appears that Mr. Peters concedes that his former wife should have primary custody. What he is seeking in these divorce proceedings is for the chancellor *809 to resolve what may be the most significant question for the non-custodial parent in a divorce: what are his rights of visitation? To send a spouse off to begin proceedings in another state, when this state has jurisdiction and there is no conflict with another state, I would find an abuse of discretion.
¶ 22. Without any evidence that the courts of any other state have entered any orders regarding custody or are even contemplating doing so, I find that the chancellor's declining to address custody because a support order has been entered in Virginia was reversible error.
¶ 23. The sparseness of the record is a considerable problem in reviewing this decree. Perhaps more has occurred in Virginia than the parties have shown us. I would reverse and remand on the issue of custody and visitation. If the chancellor on remand is shown something further about the Virginia proceedings to indicate that there is pending there or has previously been resolved matters regarding visitation and custody, then that is for him to consider.
McMILLIN, C.J., BRIDGES AND LEE, JJ., JOIN THIS SEPARATE OPINION.