KING, C.J.,
for the Court.
¶ 1. On September 25, 2000, the Nesho-ba County Department of Human Services(DHS) obtained custody of the minor child H.G. under an emergency order from the Neshoba County Youth Court. On September 27, 2000, a temporary custody order was issued by the Youth Court of Neshoba County which placed custody of the child with the Neshoba County Department of Human Services, pending a hearing.
¶ 2. Jerry and Barbara Jackson, who contracted with DHS to serve as foster parents, volunteered to serve as foster parents to H.G.
¶ 3. In January 2002, Kimberly Hodge, an employee of the Department of Human Services, serving as homemaker to the Jacksons, filed a petition for the adoption of H.G. in the Lauderdale County Chancery Court. On August 14, 2003, the Lauderdale County Chancery Court heard the Hodges’ petition for adoption. The court terminated the parental rights of the birth parents, and simultaneously approved the adoption of H G. by the Hodges.
¶ 4. On August 25, 2003, DHS filed its motion for reconsideration of the Lauder-dale County Chancery Court adoption decree or, alternatively, to stay the judgment pending appeal. On August 29, 2003, the Jacksons filed a motion to intervene so that they might seek to adopt H.G. The chancery court denied the motion for intervention. On February 2004, Chancellor Springer recused herself. Judge Jerry Mason heard the motion for reconsideration via audio tape and summarily denied the motion.
¶ 5. Aggrieved by the chancery court’s decision the Jacksons and the State of Mississippi appeal the decision citing as the error the following:
I. The Lauderdale Chancery Court lacked jurisdiction in light of the Neshoba County Youth Court’s prior *1159 and ongoing proceeding regarding H.G.
II. The Lauderdale Chancery Court committed reversible error in ruling contrary to the recommendations of the guardian ad litem while failing to list and address the guardian’s qualifications and recommendations.
III. The court’s cumulative errors of rewarding the unethical behavior of the Hodges and simultaneously terminating parental rights and granting the adoption resulted in a proceeding that was not in the best interest of H.G.
IV. Was the application of the Jack-sons for intervention timely?
V. Is it against the public policy of the State of Mississippi and inequitable for a child to be adopted over the objection of the DHS during the pendency of parental rights termination proceedings, where proposed adopting parents have used their position with the DHS in violation of DHS to be in a position to adopt a child, where the competing interests of foster parents are not represented due to the foster parents honoring their agreement with DHS?
¶ 6. This Court on its own motion remanded this case to the chancery court, and directed that it provide written findings as to its reasons for not accepting the recommendations of the guardian ad litem. This Court has those findings, and will proceed to the merits of this case. This Court finds no merit in the issues raised, and therefore affirms the decision of the Lauderdale County Chancery Court.
FACTS
¶ 7. The minor child, H.G., was born on September 21, 2000, in Neshoba County. At H. G.’s birth, her mother tested positive for the presence of cocaine and barbiturates in her system. Based upon that positive test, the following day, September 22, 2002, the Neshoba County Youth Court issued an emergency custody order, which placed custody of H.G. with DHS. The birth mother was a resident of Lauderdale County and the birth father was a resident of Neshoba County.
¶ 8. On September 24, 2000, Jerry and Barbara Jackson, residents of Clarke County, agreed to serve as foster parents to H.G. As foster parents, the Jacksons signed an agreement referred to as a “Contract for Designation of Foster Home.[1]” Under that agreement, foster parents are prohibited from seeking the adoption of a child within their custody until all efforts at family reunification have been exhausted and the child has been freed for adoption. On September 27, 2000, DHS began to work with the birth mother to facilitate reunification. It required the mother to undergo drug testing and treatment. On March 14, 2001, the Neshoba County Youth Court conducted a *1160 reunification hearing. The court found that the birth mother was not presently a fit person to have custody of the minor child. The court granted reasonable visitation to the mother, but continued the DHS’s custody of H. G., directing that it continue reasonable efforts at family reunification.
¶ 9. On March 21, 2002, after four hearings on the matter of the reunification of H.G.[2] with her birth mother, the Neshoba County Youth Court determined reunification was unfeasible and issued a permanency order, which left the custody of the minor child with DHS, and directed that DHS seek to terminate the natural mother’s paternal rights. The permanency order was filed in the Neshoba County Chancery Clerk’s office on October 17,-2002. On March 14, 2003, DHS filed its petition for termination of parental rights.
¶ 10. In addition to H.G., the Jacksons have one adopted child and one foster child. H.G. suffered from a condition known as club foot, for which she received care from medical personnel in Jackson, Mississippi. DHS provided an employee known as a homemaker to accompany H.G. on her medical visits to Jackson. The homemaker assigned to H.G. was Kimberly Hodge, the appellee.
¶ 11. On January 2, 2002, Kimberly Hodge, while still an employee of the Department of Human Services serving as homemaker to the Jacksons, filed a petition for the adoption of H.G. in the Laud-erdale County Chancery Court. The petition was accompanied by the birth parents’ consent for the adoption of H.G. by Kimberly and Jeffrey Hodge. During this time, H.G. remained in the home of the Jacksons. On March 8, 2002, DHS filed its objection to the petition for adoption in Lauderdale County Chancery Court.
¶ 12. On May 6, 2002, the chancery court appointed a guardian ad litem for H.G. On July 31, 2002, the guardian ad litem filed his report and recommendations. The report stated that it was in the best interest of H.G. that she remain with the Jacksons, and that DHS should seek a termination of parental rights so that the Jacksons could then adopt H.G. He recommended that the Hodges’ adoption petition be dismissed as premature and the DHS plan for the child be executed. On March 14, 2003, DHS filed its petition for termination of parental rights.
¶ 13. On August 14, 2003, the Lauder-dale County Chancery Court heard the Hodges’ adoption petition. That court terminated the parental rights of the birth parents, and simultaneously granted the Hodges’ petition to adopt H.G. On August 25, 2003, DHS filed its motion for reconsideration or, alternatively, to stay judgment pending appeal. On August 29, 2003, the Jacksons filed a motion to intervene for the purpose of adopting H.G. The chancery court determined that the Jacksons’ failure to submit a petition for adoption, although in violation of their contract with DHS, prohibited their intervention.
ISSUES AND ANALYSIS
JURISDICTION
¶ 14. The appellants, DHS and the Jacksons, contend that the Lauderdale County Chancery Court lacked jurisdiction to hear the adoption proceeding because the Neshoba County Youth Court had paramount jurisdiction. Jurisdiction is a question of law. Entergy Miss., Inc. v. Burdette Gin Co., 726 So.2d 1202, 1204-05 (Miss.1998). This Court reviews questions of law de novo. See Saliba v. Saliba, 753 So.2d 1095, 1098 (Miss.2000); Peters v. *1161 Peters, 744 So.2d 803, 804 (Miss.Ct.App.1999).
¶ 15. The appellants contend that on September 23, 2000, the youth court established jurisdiction by its issuance of an emergency custody order. They assert that under Mississippi Code Annotated § 43-21-151(1), the youth courts have the exclusive original jurisdiction in all proceedings concerning “abused or neglected minors.” As further authority for that position, the appellants cite to K.M.K. v. S.L.M., 775 So.2d 115, 117 (Miss.2000). The appellants suggest that the Neshoba County Youth Court acquired jurisdiction of this under its responsibility to protect abused and neglected children, and maintained that jurisdiction, by conducting ongoing hearings regarding the fitness of the birth mother, the custodial issues and reunification of the family. The appellants are correct that our supreme court has held when the parties are first subject to the jurisdiction of the youth court for proceedings involving abuse and neglect, that youth courts have “priority.” Id. at (¶ 10).
¶ 16. We disagree that K.M.K. is applicable in this case. Our supreme court also stated in K.M.K. that:
“We note especially, however, that this holding is limited to questions of priority jurisdiction in counties that have a county court sitting as a youth court in addition to a chancery court.”
FN1. We note that there are some matters concerning abused and neglected children over which the youth court has no jurisdiction. See Miss.Code Ann. § 93-17-3 (1994) (adoption petitions must be filed in the chancery court). Our holding in this case is, of course, limited by statutory authority determining proper jurisdiction.
Id. at (¶ 10)
¶ 17. As stated by the chancellor in addressing the jurisdictional issue, “this is not a conflict between a county court sitting as youth court and a chancery court in the same jurisdiction, which is the limited application of K.M.K. case.” Therefore we find that the jurisdiction of the chancery court was proper.
GUARDIAN AD LITEM
¶ 18. The Jacksons contend that the chancellor failed to address the guard: ian ad litem’s recommendations. The guardian ad litem recommended that the Hodges adoption request be denied, and that the Jacksons be allowed to'adopt the minor child. The chancery court provided only a cursory acknowledgment of the guardian ad litem’s recommendations.
¶ 19. Mississippi Code Annotated § 93-17-8(1)(b) provides that, “[w]henever an adoption becomes a contested matter, whether after a hearing on a petition for determination of rights under Section 93-17-6 or otherwise, the court ... (b) shall appoint a guardian ad litem to represent the child.” The recommendations of the guardian ad litem are an additional consideration to aid the judge in his decision. There is no requirement that the judge follow the recommendations of the guardian ad litem. S.N.C. v. J.R.D., 755 So.2d 1077, 1082 (¶¶ 15-18) (Miss.2000). The ultimate decision rests solely with the judge, who should earnestly consider the recommendations of the guardian ad litem. Id.
¶ 20. The general rule is that when the court’s ruling “is contrary to the recommendation of a statutorily required guardian ad litem, the reasons for not adopting the guardian ad litem’s recommendation shall be stated by the court in the findings of fact and conclusions of law.” S.N.C. v. J.R.D., 755 So.2d 1077, 1082(¶ 3) (Miss.2000) (emphasis added).
¶ 21. Upon remand Chancellor Springer provided this Court with a very *1162 well written and detailed analysis of the guardian ad litem’s recommendations and her reasons for not following them. In her additional findings, the chancellor noted that (1) her desire to find a permanent loving home for a child nearly three years old, who had spent the greater portion of her life in foster care was her primary consideration, (2) the child appeared to have simply fallen into administrative cracks and been ill-served by DHS, (3) significant portions of the guardian ad li-tem’s evidence and recommendations were without corroboration and lacking in credibility, and (4) the guardian ad litem failed to update his report.
The chancellor sits as the finder of fact, and is the judge of the weight and credibility to be accorded testimony. Where her decision is supported by substantial evidence, this Court is obligated to affirm. Funderburk v. Funderburk 909 So.2d 1241, 1244(¶ 10) (Miss.Ct.App.2005). Even a cursory reading of the record demonstrates that it contains substantial evidence which supports the chancellor’s decision.
¶ 22. This issue is without merit.
CUMULATIVE ERROR
¶ 28. Having found no error by the chancellor, this Court can find no cumulative error. Sheffield v. State 844 So.2d 519, 525(¶ 16) (Miss.Ct.App.2003)
RIGHT OF INTERVENTION AND PUBLIC POLICY CONCERN
¶ 24. The Jacksons also suggest that the chancellor committed error when their motion for intervention was denied. However, the paramount interest to be considered in this case was that of the minor child, and not the desires of the Jacksons. The chancery court found, and this Court agrees, that under the facts of this case, the continued litigation over the adoption of the minor child was contrary to her best interest.
¶ 25. Under the provisions of M.R.C.P. 24(a)
(a) Intervention of Right. Upon timely application, anyone shall be permitted to intervene in an action:
(1) when a statute confers an unconditional right to intervene; or
(2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant’s interest is adequately represented by existing parties.
¶ 26. Chancellor Mason determined that although the Jacksons had an interest relating to the action, their failure to timely seek intervention, precluded their intervention in this matter.
¶27. Factors to be considered in determining the child’s best interest are stability of environment, ties between prospective adopting parents and children, moral fitness of parents, home, school and community record of the child. Natural Mother v. Paternal Aunt 583 So.2d 614, 619 (Miss.1991). The chancellor considered these factors, and found that they weighed in favor of the adoption by the Hodges. Because the primary concern must be the child’s best interest, we hold that the chancellor was not manifestly in error when the Jacksons were excluded as adoptive parents.
¶ 28. THE JUDGMENT OF THE CHANCERY COURT OF LAUDER-DALE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO'THE APPELLANTS.
*1163 LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.

. The Jacksons were designated as foster parents in February 1993. As an administrative procedure, the Jacksons entered into an agreement referred to as "A Contract for Designation of Foster Parent.” Part A Subsection one of the contract provides, "We understand that the actual permanent legal custody of children placed in our home for Foster Care will remain in either the natural parent or parents of the child of the Department according to the facts of the individual case, and that by placing a child in our home for foster care, the Department does not confer any right to custody in us, and we hereby expressly waive any right to custody of a child placed in our home for Foster Care and expressly agree that we will not attempt to adopt any child placed in our home for Foster Care unless the child is made free for adoption by the written decision and action of the State Department of Public Welfare.”

. The natural child’s birth name has been omitted for confidentiality purposes.