MYERS, P.J.,
for the Court.
¶ 1. The Chancery Court of Warren County granted Melissa Hampton an uncontested divorce from Joseph Todd Hampton on the ground of uncondoned adultery on December 28, 2004. Mr. Hampton motioned the lower court to set aside the judgment of divorce, alleging that he did not receive proper notice of the hearing on the divorce petition; however, his motion was denied. Mr. Hampton now appeals the denial of his motion, alleging a jurisdictional defect in the divorce judgment, as well as asserting error in the finding that he received proper notice of the divorce complaint against him.
¶ 2. We affirm, finding no jurisdictional defect and no reversible error in the decision of the chancellor.
STATEMENT OF FACTS AND PROCEDURAL HISTORY
¶ 3. This case has its beginning in Warren County on April 5, 2002, with Mrs. Hampton filing a bill for separate maintenance, which was assigned cause number 2002-126GN. Mr. Hampton answered Mrs. Hampton’s separate maintenance complaint and separately filed a cross-complaint for divorce on the grounds of cruel and inhuman treatment, or in the alternative, irreconcilable differences. Following a hearing in which Mr. Hampton admitted his adultery, the chancellor disposed of these two matters filed in cause number 2002-126GN by granting Mrs. Hampton’s bill for separate maintenance and denying Mr. Hampton’s cross-complaint for divorce.
II4. Subsequent to the chancellor’s decision in cause number 2002-126GN, Mrs. Hampton initiated divorce proceedings against Mr. Hampton on May 19, 2004, by filing her complaint for divorce on the grounds of uncondoned adultery or, in the alternative, irreconcilable differences. The May 19, 2004 complaint for divorce was assigned cause number 2004-157GN by the court clerk and filed accordingly. On the same day that the complaint was filed, an order setting the cause for a June 30, 2004 hearing was signed by 'the chancellor, and a summons was issued. Mr. Hampton was served with the documents, evidenced by a returned proof of service contained in the record. The hearing set for June 30, 2004 never occurred and the hearing date was rescheduled for December 3, 2004. Mr. Hampton did not attend this December 3, 2004 hearing and on Décember 28, 2004, the chancellor granted Mrs. Hampton a judgment of divorce on the ground of uncondoned adultery; made findings as to the distribution of marital assets, and awarded alimony to Mrs. Hampton.
¶ 5. Following the entry of judgment of divorce, Mr. Hampton filed his motion to set aside the judgment of divorce, the parties submitted briefs, and a hearing was held on the motion. At the hearing on the motion to set aside the judgment, the court clerk was called to testify regarding her procedure for filing complaints and issuing summons.
¶ 6. Following the hearing on Mr. Hampton’s motion to set aside the judgment, and a period designated for supplemental briefing, the chancellor denied Mr. Hampton’s motion and decided against modifying the opinion. The chancellor found Mr. Hampton’s testimony regarding *1184 his absence of notice to be “questionable.” From the denial of his motion to set aside the judgment of divorce, Mr. Hampton appeals.
I. WHETHER THERE WAS VENUE IN THE CHANCERY COURT OF WARREN COUNTY, MISSISSIPPI WHEN MELISSA HAMPTON CLAIMED HOMESTEAD IN HINDS COUNTY, MISSISSIPPI
¶ 7. In hearing and deciding the case, the chancellor found that Mrs. Hampton’s residence was located in Warren County and retained jurisdiction over the matter. Mr. Hampton argues that the divorce suit was improperly in the Warren County chancery court because, prior to filing the complaint, Mrs. Hampton claimed homestead exemption in Hinds County. He further argues that the divorce complaint should be dismissed, rather than transferred, due to lack of proper venue. Mrs. Hampton asserts that Mr. Hampton has waived his issue regarding the venue of the divorce suit because he did not raise the issue in his motion to set aside the judgment.
STANDARD OF REVIEW
¶ 8. Construction of the applicable jurisdictional statute in a divorce action is reviewed de novo, as this issue requires review of law and not fact. Peters v. Peters, 744 So.2d 803, 804(¶ 2) (Miss.Ct.App.1999).
LEGAL ANALYSIS
¶ 9. We begin our analysis with discussing Mrs. Hampton’s assertion of Mr. Hampton’s waiver of venue. Objections to venue in a divorce action cannot be waived. Our divorce statute is an “exclusive venue statute,” and thus it is jurisdictional in nature. Nat’l Heritage Realty, Inc. v. Estate of Boles, 947 So.2d 238, 249(¶ 36) (Miss.2006). While the general rule is that objections to venue are proee-durally barred if not first asserted in the underlying suit, the issue of bringing a divorce action in the proper venue is a matter concerning jurisdiction of the subject matter of the suit and thus cannot be waived. Price v. Price, 202 Miss. 268, 274, 32 So.2d 124, 126 (1947). Having disposed of the matter of waiver, the analysis turns to the issue of whether the chancellor lacked jurisdiction to hear the divorce. We note that even if proper venue is lacking in a divorce action, dismissal is not the proper remedy, but rather the case is to be transferred to the proper venue. See Miss.Code Ann. § 93-5-11 (Supp.2006) (2005 amendment providing for transfer of venue in accordance with Rule 82(d) of the Mississippi Rules of Civil Procedure); contra Pnce, 202 Miss, at 274, 32 So.2d at 126 (holding that a bill for divorce must be dismissed, not transferred, if proper venue is lacking).
¶ 10. At the time of the filing of the divorce action, Mr. Hampton was a resident of Louisiana. Mrs. Hampton, however, was a resident of Mississippi. Mrs. Hampton filed the action in the Chancery Court of Warren County, but Mr. Hampton asserts that Mrs. Hampton was a resident of Hinds County at the time of the filing. If the defendant in a divorce suit is a nonresident of Mississippi, such as in this case, the statute mandates that all divorce complaints, with the exception of those brought on the grounds of irreconcilable differences, are to be filed in the county in which the plaintiff resides. Miss.Code Ann. § 93-5-11. “[T]he word ‘residence’ as used in divorce statutes is synonymous with ‘domicile.’ ” Dunn v. Dunn, 577 So.2d 378, 380 (Miss.1991) (citing Bilbo v. Bilbo, 180 Miss. 536, 549, 177 So. 772, 775 (1938)). The county where a party claims homestead exemption is but *1185 one of many factors considered in determining the residence of a party. See Nat’l Heritage Realty, Inc., 947 So.2d at 249 (¶ 34-36); Dunn, 577 So.2d at 380.
¶ 11. In determining whether Mrs. Hampton’s residence existed in Warren County or Hinds County, we look to the supreme court opinion of Dunn for guidance. In Dunn, the husband was sued for divorce in Hinds County; however, he asserted that proper jurisdiction was in Rankin County. In support of his position, Dr. Dunn provided by affidavit that he had lived in Rankin County from the time the couple purchased a house until the day that Dr. Dunn left the home due to the couples’ separation. Following this time, Dr. Dunn lived in a motel for a brief period in Hinds County, then moved as a guest, temporarily, into a friend’s house located in Hinds County. It was at this Hinds County residence that Dr. Dunn was served a complaint for separate maintenance and summons filed in Hinds County. Dr. Dunn argued that Rankin County was the proper venue because he continued to practice medicine in that county, maintained his voter registration there, and filed his homestead exemption in Rankin County. Notwithstanding the evidence put forth by Dr. Dunn regarding his residency in Rankin County, the chancery court found that jurisdiction was proper in Hinds County. On appeal, the supreme court reversed the chancery court’s finding of jurisdiction, basing its decision on consideration of several different factors. Id. In determining that Dr. Dunn’s residency existed in Rankin County, the court considered “the fact that Dr. Dunn still owned a home in Rankin County, Mississippi, still considered it his residence, was registered to vote and did vote in Rankin County, and had homestead exemption on a home in Rankin County....” Id. at 380.
¶ 12. Here, Mrs. Hampton filed her complaint in Warren County asserting that she was an adult resident citizen of Warren County. At the hearing held on June 1, 2005, Mrs. Hampton testified that she moved to an apartment located in Warren County approximately seven months before filing her complaint for divorce. She further testified that she was in the process of selling the couple’s former home located in Hinds County, upon which the homestead exemption was claimed, but had refrained from selling the house pending the finality of the couple’s divorce. Additional testimony adduced that Mrs. Hampton registered her vehicle and obtained her car tags in Warren County. It is apparent to this Court that, pursuant to the impending divorce of the parties, Mrs. Hampton relocated from Hinds County to Warren County. The chancellor had ample evidence before her to retain jurisdiction over the divorce action. Therefore, we find that the chancery court’s jurisdiction over the divorce action properly lay in Warren County.
II. DID THE TRIAL COURT ERR IN ENTERING AN UNCONTESTED DIVORCE WHEN THE UNRE-BUTTED TESTIMONY WAS THAT JOSEPH TODD HAMPTON WAS SERVED WITH A SUMMONS BEARING THE WRONG CASE NUMBER ON IT AND HE FILED A PRO SE ANSWER IN THE CAUSE NUMBER HE WAS SERVED
¶ 13. The chancellor denied Mr. Hampton’s motion to set aside the judgment of divorce, finding that an executed summons was personally served upon Mr. Hampton and that Mr. Hampton’s testimony regarding the matter to be “questionable.” Mr. Hampton appeals the denial of his motion, arguing that his divorce was granted against him without notice. Hampton ar *1186 gues that the lower court erred in finding that he was properly served in the matter, asserting that the complaint and summons with which he was served bore an incorrect cause number. This allegedly incorrect cause number, Hampton asserts, caused him to file his pro se answer in the wrong court file. Thus, Hampton argues that he was not afforded proper notice by summons of the divorce hearing and the subsequent uncontested divorce was improperly entered against him. In response to Mr. Hampton’s argument, Mrs. Hampton attacks Mr. Hampton’s credibility by pointing out that Mr. Hampton has, in other instances and before other courts, made false representations regarding his adultery and his domicile.
STANDARD OF REVIEW
¶ 14. “Our scope of review in domestic relations matters is limited ... [in that we] will not disturb a chancellor’s findings unless they are manifestly wrong, clearly erroneous, or if the chancellor applied an erroneous legal standard.” Jundoosing v. Jundoosing, 826 So.2d 85, 88(¶ 10) (Miss.2002). We are limited to reversing only when there is no substantial credible evidence in the record to justify the finding. Id.
LEGAL ANALYSIS
¶ 15. The chancellor denied Mr. Hampton’s motion to set aside the judgment, finding factually that the summons was properly executed and bore the proper return. The chancellor also found that the complaint and summons, which were introduced as exhibits at the hearing, contained the original signature and stamp of the court clerk. This Court, in reviewing whether the chancellor had a sufficient basis to make her findings, only has at our disposal the evidence and testimony contained in the record. Within the record, there exists every indication that the complaint and summons were properly served upon Mr. Hampton, evidenced by the executed summons filed in the docket bearing the proper return. We cannot say that the chancellor, having this evidence before her, erred in finding against Mr. Hampton on his motion to set aside the divorce judgment.
¶ 16. In addition to finding that Mr. Hampton was provided with proper notice, the chancellor found the testimony of Mr. Hampton to be “questionable.” In support of this finding, the chancellor cites to several inconsistencies from Mr. Hampton’s testimony and filings with courts. The chancellor’s order points out that while Mr. Hampton was asking the court to deny the divorce filed in Warren County, he was simultaneously seeking a divorce in Louisiana. Furthermore, the order points out that a Louisiana court found that Mr. Hampton, in filing his divorce complaint, falsely represented to that court that his domicile was in Louisiana and dismissed his complaint. The chancellor further notes inconsistencies within Mr. Hampton’s statements to the Chancery Court of Warren County with regard to his admitted adultery. At the 2002 separate maintenance hearing, Mr. Hampton admitted his adultery; however, in his answer to the 2004 divorce complaint, Mr. Hampton denies the paragraph of the complaint averring the ground of uncondoned adultery.
¶ 17. In our review of the chancellor’s decision, we are mindful of our supreme court’s command that “[t]he chancellor, being the only one to hear the testimony of witnesses and observe their demeanor, is to judge their credibility.” Madden v. Rhodes, 626 So.2d 608, 616 (Miss.1993). “[The chancellor] is best able to determine the veracity of their testimony, and [an appellate court] will not undermine the chancellor’s authority by replacing [her] *1187 judgment with its own.” Id. We find that the chancellor had a sufficient basis to disbelieve Mr. Hampton’s testimony regarding his lack of notice, and we defer to the chancellor in finding that Mr. Hampton was not credible. Therefore, this Court finds that this issue is without merit.
¶ 18. While we deny Mr. Hampton’s argument as to the chancellor’s decision regarding the issue of notice, we find it necessary to further address the merits of Mr. Hampton’s argument concerning the mistake in the assignment of cause numbers. We notice a potential procedural defect concerning the court clerk’s assignment of two different cause numbers to this divorce case and question whether this practice conforms with the procedures set forth under the Uniform Chancery Court Rules. For reasons unknown to this Court, the court clerk was directed to open a new file when Mrs. Hampton filed her complaint for divorce in 2004, instead of filing the complaint and subsequent papers in the original file containing the 2002 bill for separate maintenance. We find it noteworthy to address the rules set forth by our legislature concerning the court clerk’s duties in filing complaints and assigning case numbers in our chancery courts. Rule 9.02 of the Uniform Chancery Court Rules sets forth the procedure for keeping documents with which the court clerk must comply. Rule 9.02 mandates that “[t]he Clerk shall place and keep all papers pertaining to each action in a separate file and all papers pertaining to the same case shall be kept in the same file.” Rule 9.02 further states, “[t]he Clerk shall place and keep the files ... in numerical order.” Both the separate maintenance suit, filed as cause number 2002-126GN, and the divorce action, filed as cause number 2004-157GN, originated from the same set of facts and involved the same parties. While we are not convinced that in this case the filing of the pleadings in two different cause numbers resulted in a reversible injustice, we are compelled to remind chancery court clerks of the filing requirements contained in Rule 9.02.
¶ 19. THE JUDGMENT OF THE CHANCERY COURT OF WARREN COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE, P.J., CHANDLER, GRIFFIS, ISHEE AND CARLTON, JJ., CONCUR. BARNES AND ROBERTS, JJ., CONCUR IN RESULT ONLY. IRVING, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.